# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALICIA A.,[1] <br><br>                             Plaintiff, <br>   v. <br> KILOLO KIJAKAZI, <br> Acting Commissioner, Soc. Sec. Admin., in official capacity, <br>                             Defendant. | Case No. 3:21-cv-00087-TMB |

## **DECISION AND ORDER**

On or about April 30, 2019, Alicia A. ("Plaintiff") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"),[2] respectively, alleging disability beginning January 28, 2018.[3] Plaintiff has exhausted her administrative remedies and filed a

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II and Title XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 36. The record appears to contain only the application summaries, not the applications themselves. The application summaries list May 1, 2019 as the application date for DIB and May 9, 2019 for SSI. A.R. 184, 186.

Complaint seeking relief from this Court.[4] Plaintiff's opening brief asks the Court to vacate the Commissioner's decision and remand for a directed finding of disability and calculation of benefits.[5] The Commissioner filed an Answer and a brief in opposition to Plaintiff's opening brief.[6] Plaintiff filed a reply brief on November 12, 2021.[7] Oral argument was not requested and was not necessary to the Court's decision. On August 10, 2021, Defendant Commissioner Saul was substituted by Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d).[8] This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9] For the reasons set forth below, Plaintiff's request for relief is granted.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 18 (Plaintiff's Br.).

[6] Docket 16 (Answer); Docket 19 (Defendant's Br.).

[7] Docket 20 (Reply).

[8] Docket Annotation (August 10, 2021).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17] In particular, the

---

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Richardson*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

---

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. § 423(d)(1)(A).

[22] 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[27] *The ALJ determined that Plaintiff had not engaged in substantial activity since January 28, 2018, the alleged onset date.[28]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the

---

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 38.

twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following severe impairments: history of acute pancreatitis with necrosis; osteoarthritis of the right shoulder; history of ETOH use; and chronic fatigue syndrome secondary to pain. The ALJ also determined that Plaintiff's sciatica; depressive disorder; anxiety disorder; and post-traumatic stress disorder, were non-severe impairments.*[30]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[31] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[32]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[33]

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 39.

[31] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[32] A.R. 40.

[33] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Case No. 3:21-cv-00087-TMB
Decision and Order
Page 6 of 18

*The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following exceptions: standing and walking for two hours and sitting for six hours in an eight-hour workday; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; occasionally performing overhead reaching with right upper extremity only (no restrictions of LUE); avoiding concentrated exposure to non-weather related extreme cold; and avoiding moderate exposure to hazardous/moving machinery and unprotected heights.*[34]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[35] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was capable of performing past relevant work as a payroll clerk.*[36]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[37] *The ALJ did not reach Step Five of the sequential analysis.*[38]

---

[34] A.R. 40.

[35] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[36] A.R. 43.

[37] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[38] A.R. 43.

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 28, 2018, the alleged onset date, through April 30, 2020, the date of the ALJ's decision.[39]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 41 years old on the alleged onset date.[40] She reported working as a payroll clerk from approximately June 2015 through January 2018.[41] On August 19, 2019, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[42] On April 13, 2020, Plaintiff appeared and testified telephonically without representation before ALJ Paul Hebda in Anchorage, Alaska.[43] On April 30, 2020, the ALJ issued an unfavorable ruling.[44] On September 8, 2020, the Appeals Council denied Plaintiff's request for review.[45] On March 3, 2021, the Appeals Council granted Plaintiff additional time to file a civil action.[46] On April 8, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[47]

---

[39] A.R. 44.

[40] A.R. 184.

[41] A.R. 231.

[42] A.R. 102–103.

[43] A.R. 54–58, 67–72.

[44] A.R. 36–44.

[45] A.R. 8–12.

[46] A.R. 1.

[47] Docket 1.

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. In her opening brief, Plaintiff alleges that the ALJ erred by "improperly rejecting Plaintiff's subjective symptom testimony."[48] She asserts that the ALJ committed legal error in two ways. First, Plaintiff argues that the ALJ's rejection of Plaintiff's testimony based on Plaintiff's symptoms not being "entirely consistent" with the medical and other evidence constituted legal error because the ALJ did not specifically identify which of Plaintiff's allegations were not credible, or what specific evidence undermined her complaints. Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting her symptom testimony.[49] Specifically, she alleges the ALJ failed to show Plaintiff's daily activities contradicted her testimony. She argues the ALJ's conclusion that Plaintiff's treatment had been routine and conservative and generally successful in controlling Plaintiff's symptoms, was not supported by the record.[50] The Commissioner disputes Plaintiff's arguments and asks this Court to affirm the agency's determination.[51]

---

[48] Docket 18 at 6–11.

[49] The Commissioner noted in briefing that she "continues to assert that the 'clear and convincing reasons' standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g), as well as agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings." Docket 19 at 3.

[50] Docket 18 at 8–11.

[51] Docket 19 at 3–6.

A. Plaintiff's Symptom Testimony

Plaintiff testified without representation, at a telephonic hearing before the ALJ, on April 13, 2020. At the hearing, Plaintiff testified that she had a "hole in her stomach" due to pancreatitis and fluid leaked out of it 24 hours a day. She reported that when she woke up in the morning, her bed was covered in fluid. Plaintiff testified that she saw multiple providers due to rotating doctors and that the doctors "say different things each time" about her pancreatitis. She also reported trying to schedule surgery, but that her doctor told her that the wait for surgery would be "even longer" due to the COVID-19 pandemic and that Plaintiff's condition was "basically chronic." She testified that she lived with a roommate and shared household chores, but that she had difficulties keeping up with the household chores and doing her normal daily activities when she experienced flare-ups of her pancreatitis symptoms. Plaintiff indicated that the flare-ups had been affecting her since 2018. She testified that the flare-ups occurred once a week and lasted "at least three to four days each time." On the days she felt good, she indicated she would go grocery shopping because she knew that the flare-ups would come back. Plaintiff indicated that lifting her legs to get into the shower was difficult and that she suffered from severe weight loss.[52]

In her function report from July 12, 2019, Plaintiff reported that bathing, dressing, cooking, shopping, and driving took "at least 20+ more minutes to complete." She reported that she could not stand for more than five minutes before becoming exhausted,

---

[52] A.R. 67–72.

had trouble sleeping, experienced constant pain, and lost fifty pounds. She also reported that her weight loss "was so drastic it [was] hard/impossible to walk [and] stand due to exhaustion." She indicated that her daily routine included showering, eating, and going back to bed and that she only went out to grocery shop or go to doctor appointments. Plaintiff reported that she grocery shopped only once a month and that it took her more than twice as long to complete her shopping. She also indicated that her roommate helped her with grocery shopping.[53]

An ALJ's assessment of a claimant's symptoms has two steps.[54] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[55] In the first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[56]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons"

---

[53] A.R. 222–30.

[54] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

[55] *Id.* (quoting *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014)).

[56] *Garrison,* 759 F.3d at 1014–15 (internal citations and quotations omitted).

for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[57]

In this case, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described.[58] The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with the medical evidence and other evidence in the record. Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, she was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's pain and symptom testimony. The ALJ provided the following reasons: (1) Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"; (2) Plaintiff's treatment was "essentially routine and conservative in nature"; and (3) the treatment Plaintiff received was "generally successful in controlling [her] symptoms."[59]

1. *Daily Activities.*

An ALJ may discount a claimant's credibility when daily activities demonstrate an inconsistency between what the claimant can do and the degree of disability alleged.[60] Daily activities are "grounds for an adverse credibility finding if a claimant is able to spend

---

[57] *Trevizo,* 871 F.3d at 678.

[58] A.R. 41.

[59] A.R. 42–43.

[60] *Burrell v. Colvin,* 775 F.3d 1133, 1137–38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination").

Case No. 3:21-cv-00087-TMB
Decision and Order
Page 12 of 18

a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."[61] Because Plaintiff stated in her function report that she was "able to perform personal care, prepare meals, do housework, go shopping, and manage money," the ALJ discounted her symptom testimony.[62] However, the ALJ does not cite to instances in the record showing Plaintiff engaging in activities that were not consistent with the severity of the symptoms she alleged.[63] Moreover, the Ninth Circuit has consistently held that a modest level of activity is not sufficient to reject a claimant's subjective complaints.[64]

Here, Plaintiff's activities, as described, were limited by flare ups of her pancreatitis. As set forth above, she reported requiring assistance from her roommate or friends to complete activities such as grocery shopping or driving. She reported she could not stand for more than five minutes before becoming exhausted, had trouble sleeping, experienced constant pain, and lost fifty pounds. She indicated that her daily routine included showering, eating, and going back to bed and that she only went out to grocery shop or go to doctor appointments.[65]

---

[61] *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014).

[62] A.R. 43.

[63] *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993) ("If the ALJ wished to reject Dodrill's pain testimony, he was required to point to specific facts in the record which demonstrate that Dodrill is in less pain than she claims").

[64] *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

[65] A.R. 222–30, 1110.

In sum, Plaintiff's daily activities were minimal and were not transferable to a work setting.[66] The ALJ failed to provide a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective testimony regarding her activities of daily living.

*2. Plaintiff's treatment.*

In the Ninth Circuit, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."[67] And, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."[68] However, symptom improvement must be evaluated in the context of the "overall diagnostic picture."[69] Here, the ALJ stated that "[a]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature." The ALJ also determined that Plaintiff's treatment had been "generally successful in controlling [her] symptoms."[70]

Again, the ALJ failed to specify instances of routine and conservative treatment contradicting Plaintiff's symptom testimony and failed to identify evidence in the record of showing Plaintiff's symptoms were controlled. Additionally, the record does not support

---

[66] *See Ghanim,* 763 F.3d at 1165; *Gallant v. Heckler,* 753 F.2d 1450, 1453 (ordering award of benefits for leg and back pain despite claimant's daily activities of cooking meals and washing dishes).

[67] *Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (internal quotation omitted).

[68] *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017).

[69] *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001).

[70] A.R. 43.

the ALJ's conclusion. The record shows Plaintiff presented to the emergency department multiple times and was hospitalized for acute pain and other medical complications associated with pancreatitis.[71] She had to travel to Seattle on multiple occasions for "percutaneous bilary tube exchanges."[72] She reported weight loss and met Virginia Mason Medical Center's criteria for "severe chronic malnutrition (as displayed by reduced energy intake, unintended weight loss, muscle loss, and fat loss)" in January 2019.[73] She reported to her provider that she continued to have pancreatitis flares every other week, lasting five to seven days, with epigastric pain and significant fluid output from her abdomen, after her drain removal in July 2019.[74] In a record from January 2020, Plaintiff reported planning surgical intervention for her pancreatic-cutaneous fistula.[75] Additionally, Plaintiff reported pain to providers despite Plaintiff's providers prescribing chronic pain medications, including oxycodone, throughout the relevant disability period.[76]

---

[71] *E.g.,* A.R. 412 (transferred to Virginia Mason Medical Center on December 28, 2018 for a GI evaluation after presenting to the emergency department at Providence Hospital in Alaska), 581 (hospitalized from September 10, 2018 through October 5, 2018 with severe pancreatitis with pancreatic necrosis, secondary peritonitis and colitis, pancreatic pseudocyst, severe hyponatremia, severe alcohol withdrawal with seizure, and severe protein calorie malnutrition), 1094 (severe acute pancreatitis).

[72] *E.g.,* A.R. 281, 289, 314, 329, 368, 511.

[73] A.R. 357–58.

[74] A.R. 1124.

[75] A.R. 1138.

[76] *E.g.,* A.R. 511, 516–24, 527, 1094–95, 1102, 1124, 1129, 1138.

We are confined to reviewing the reasons the ALJ asserts.[77] In this case, the ALJ's stated reasons for rejecting Plaintiff's symptom testimony failed to meet the clear and convincing standard. It is difficult to understand how Plaintiff's month-long hospitalization, transfers to Seattle for surgical management, long-term prescriptions for opiate pain medications, and planning surgery for the removal of a pancreatic-cutaneous fistula were considered routine and conservative treatment or evidence of generally successful treatment of Plaintiff's pain and other symptoms. In sum, the ALJ did not offer specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

B. <u>Scope of Remand</u>

Plaintiff asks the Court to reverse the final agency decision and remand for the immediate calculation of benefits.[78] The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[79] A court follows a three-step analysis to determine whether a case raises the "rare circumstances" that allow a court to exercise its discretion to remand for an award of

---

[77] *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) ("We are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[78] Docket 18 at 12.

[79] *Treichler,* 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

Case No. 3:21-cv-00087-TMB
Decision and Order
Page 16 of 18

Case 3:21-cv-00087-TMB   Document 21   Filed 04/29/22   Page 16 of 18

benefits.[80]  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.[81]

Here, the ALJ legally erred by failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.  Additionally, the record is complete regarding Plaintiff's impairments and further proceedings would serve no useful purpose.  There is significant evidence that Plaintiff's symptoms resulting from her pancreatitis flares would prevent her from sustaining full-time work.  And, if Plaintiff's discredited symptom testimony is credited as true, the ALJ would be required to find Plaintiff disabled.  Therefore, the rare circumstances of this case weigh in favor of remanding for the immediate payment of benefits.[82]

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence in

---

[80] *Garrison,* 759 F.3d at 1020.

[81] *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

[82] *Leon v. Berryhill,* 880 F.3d 1041, 1047 (9th Cir. 2017) ("We have previously awarded benefits without further administrative proceedings only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits").

the record.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 18 is GRANTED and this matter is REMANDED for the immediate payment of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 29th day of April, 2022 at Anchorage, Alaska.

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE